ALEXANDER BONENFANT v. THE AMERICAN FIRE INSURANCE COMPANY.

*Fire insurance—Forfeiture of policy—Waiver—Occupancy of dwelling-house—Assignment of policy—Pleading.*

1. The sale by the owner on contract of land, the buildings upon which are insured under a policy forfeitable if the assured sells or transfers the insured property without the indorsed consent of the company, will not avoid the policy where the agent who wrote the insurance had full knowledge of such sale, and made indorsements on the policy referring thereto, and to the interest of each party in case of fire; and, even if such a sale had that effect, such action of the agent would operate as a waiver.

2. Forfeitures are not favored either at law or in equity, and provisions therefor in a policy of insurance will be strictly construed, and courts will find a waiver upon slight evidence, when the equity of the claim is, under the contract, in favor of the assured. *Lyon v. Insurance Co.*, 55 Mich. 146, and cases there cited.

3. *Occupancy* implies the *actual* use of a house as a dwelling place, and the insurer has a right to the care and supervision involved in such occupancy, under a policy forfeitable if the building shall be or become vacant or unoccupied without the consent of the company; and leaving some one to look after the property when vacated by the assured will not prevent such forfeiture.[1]

4. Where a land-owner contracted for its sale, and assigned a policy of insurance held by him upon the buildings to the vendee, with the consent of the company, the loss, if any, being payable to the vendor as his interest might appear, a retransfer of the land and policy to the vendor *after* such loss will not enable the vendor to recover therefor under a declaration *not* counting upon such re-assignment, but upon the sole ownership of the property of the plaintiff, and insurance made to and held by him as such owner.

5. The assignee of a policy of insurance, under an assignment made *after* a loss has occurred, stands in the shoes of the assignor, and takes the policy subject to any forfeiture incurred by a violation of its conditions by the assignors.

Error to Iosco. (Simpson, J.) Argued June 27 and 28, 1889. Decided October 18, 1889.

*Assumpsit* on a fire insurance policy. Defendant brings error. Reversed. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*M'Cutcheon & Elliott* (*Hanchett, Stark & Hanchett*, of counsel), for appellant.

*Henry & Cornville*, for plaintiff.

LONG, J. This action is brought upon a fire insurance policy issued by defendant company August 27, 1887.

The declaration alleges that the defendant, by its policy of that date, insured the plaintiff for one year for $600 on his two-story frame building, occupied by a tenant as a dwelling and inn, the plaintiff being the owner and in possession of

---

[1] See *Marsh v. Bristol*, 65 Mich. 379 (head-notes 2, 3), on the question of occupany for dwelling-house purposes.

the property; that at the time of making the insurance, and from thence to the time of the loss, the plaintiff had an interest in the property to the amount of $1,000, being the sole owner of said property; that on March 10, 1888, the property was destroyed by fire, and that defendant has had due proof of said loss and damage by fire in accordance with the terms of the policy.

At the time the policy issued the plaintiff resided at Oscoda, the property insured being situated in Alcona county, some 18 miles distant. The policy was issued to the plaintiff by M'Cutcheon, who was defendant's local agent, residing at Oscoda, who saw the building before the insurance was made, and while it was occupied by one Mr. McNurney, and issued the policy on the plaintiff's statement that McNurney had gone out, and that plaintiff had a good tenant. The premium was fixed regarding the building at hotel rates.

September 12, 1887, Bonenfant sold the property by contract to Thomas Carroll for $1,200, a payment of $200 being made down, $40 to be paid October 1, 1887, and monthly payments of $40 to be made thereafter. This contract was drawn by Mr. Elliott, the law partner of Mr. M'Cutcheon, while the latter was absent from his office, but who was informed afterwards by Elliott of the contract, and that the parties to it wanted the policy assigned to Carroll. Mr. M'Cutcheon filled out and signed the company's assent to the assignment of Bonenfant's interest in the policy to Carroll, which was indorsed on the policy. Mr. M'Cutcheon also indorsed on the policy an assignment of this interest to Carroll, but this was never executed by Bonenfant.

Bonenfant testified that he left with Elliott directions to have the policy transferred to Carroll, loss, if any, payable to Bonenfant, according to his interest. The contract of sale to Carroll and the policy were kept in the office of M'Cutcheon & Elliott until after the fire, and, as Bonenfant claims, with the understanding that loss, if any, should be payable

to him, as his interest should appear under the contract. At the time of the fire Carroll had paid on the contract about $160. The plaintiff claimed an insurable interest in the property to the extent of the amount named in the policy.

Carroll forfeited under his contract by not keeping up his payments, and after the fire assigned all his interests in the contract, as well as in the policy, to Bonenfant.

The policy was in the usual form, and contained certain conditions, among which are the following:

"If during the existence of this policy, or any renewal thereof, the risk shall be increased by any means whatever, with the knowledge of the assured, and the assured shall neglect to notify this company thereof, and have the same indorsed thereon, paying therefor such additional premium as shall be demanded; or if the building herein described shall be or become vacant or unoccupied without consent of the company indorsed thereon, * * * then, and in every such case, this policy shall be null and void."

The defendant gave evidence that there were nine lumber camps within four or five miles of the house, and that the house had the reputation of being a house of ill fame, and that such use increased the risk to such an extent as to render it uninsurable. Defendant also gave evidence that the house had become vacant at the time of the fire.

The plaintiff gave some evidence tending to show that the house had not become vacant, and insisted, under his proofs, that if the house was being used for the purposes of prostitution the fact was without the knowledge of the plaintiff.

There does not seem to be much controversy but that the premises were being used for purposes of prostitution, and that such use would naturally tend to increase the fire risk. Upon these issues the case was submitted to the jury, who found a verdict for the plaintiff for the amount of the policy and interest.

Defendant's counsel requested the court to charge the jury:

" The policy provides that if the assured shall sell or transfer the property insured, or incumber the property, or if any change takes place in the title, location, interest, or possession of the property, whether by sale, transfer, or conveyance, without the consent of the company indorsed on the policy, then, in every such case, the policy shall be null and void."

This the court refused to give.

We see no error in the refusal. It is merely a statement of the conditions in the policy, and the giving or refusal of the request could not have affected the rights of either party in the suit; but it appears from the defendant's own testimony that the agent of the company was fully cognizant of all the facts as to the transfer by plaintiff to Carroll, and himself made the indorsements on the policy referring to the contract of purchase by Carroll, and the interest which each party was entitled to take in the insurance in case of loss by fire.

Under these circumstances such contract cannot be held to work a forfeiture of the policy, and, even if it had such effect, the action of the agent in making the indorsement upon the policy would operate as a waiver.

A forfeiture is not favored either in law or equity, and a provision for it in a contract will be strictly construed, and courts will find a waiver of it upon slight evidence, when the equity of the claim is, under the contract, in favor of the assured. *Lyon v. Insurance Co.*, 55 Mich. 146 (20 N. W. Rep. 831), and cases there cited.

The defendant also asked the court to charge the jury:

" The policy insures the building as occupied by a tenant as a dwelling and inn. It also provides that if the building shall be or become vacant or unoccupied, without the consent of the company indorsed on the policy, the policy shall be null and void. The evidence shows that the building became vacant and unoccupied within the meaning of the policy from the time when Thomas Carroll and his family moved out of the building, on Tuesday or Wednesday, and that it remained vacant and unoccupied until a week from

the following Friday, when it burned.    There is no evidence
that the company knew of or assented to such vacancy and
want of occupancy.    For this reason the policy became void,
and the plaintiff is not entitled to recover."

This the court refused to give in charge to the jury, but
assumed that there was some evidence that the building was
occupied, and submitted the question to the jury as one of
the facts for their determination, charging them that—

"If the occupants of the house had moved out of the build-
ing and caused their furniture to be moved with the inten-
tion of vacating and leaving the house alone, without occu-
pants, or any one to look after it, then it would become
vacant and unoccupied within the meaning of the policy
from the time that Thomas Carroll and his family moved
out of the building with the furniture; and if it was vacant
when it burned, the policy would be void, and the plaintiff
would not be entitled to recover in this case.    But if the
absence was merely temporary, without removing the furniture,
and with the intention of continuing it as a dwelling and
returning there in a short time, the absence becomes tempo-
rary absence, and in that case the building did not become
vacant or unoccupied within the meaning of the policy."

From a careful reading of the testimony, which is all
returned with the record, we are not prepared to say that
there was no evidence that the building was occupied.    While
it is true that the evidence tended strongly to show that Car-
roll and his family had quitted and removed from the prem-
ises with the intention of remaining permanently away, and
that they had abandoned the premises, yet plaintiff intro-
duced some testimony under which the question became one
of fact for the jury, if the matter had been fairly submitted
to them by the court ; but we think the court was in error in
stating to the jury that—

"If Carroll moved out and took his furniture away, and
left the house without occupants, or any one to look after it,
then the policy would be void."

This was a qualification to which the plaintiff was not
entitled.    The mere fact that Carroll may have left some one

to look after it when he moved out and vacated it would not save the forfeiture of the policy.

Occupancy implies an actual use of the house as a dwelling place. The insurer had a right, by the terms of the policy, to the care and supervision which was involved in such occupancy. *Shackelton v. Sun Fire Office,* 55 Mich. 292 (21 N. W. Rep. 345); *Ashworth v. Insurance Co.,* 112 Mass. 422.

Counsel for the defendant also asked the court to instruct the jury that—

"If it was a fact that the policy was assigned to Mr. Carroll, with the loss, if any, payable to Mr. Bonenfant, then the plaintiff cannot recover."

The court, in substance, gave this request, but qualified it by adding:

"But if this fact was brought to the attention of Mr. M'Cutcheon, and he consented to it, and knew it, then the fact would not forfeit the policy."

The court also further qualified this request by the further instruction,—

"Unless Mr. Carroll had assigned all his interest in the policy before the commencement of the suit to Bonenfant, making him in fact the owner of the policy and the rights under it."

That is, the trial court was of the opinion, and so instructed the jury, that although Bonenfant may have assigned all his interest in the policy to Carroll at the time of the making of the contract of sale of the land to him, yet, inasmuch as Carroll had transferred all his interest in the land, and his rights under the policy, back to the plaintiff before the suit was commenced, then the plaintiff would stand in Carroll's shoes, and have a right of recovery upon that theory of the case. The declaration does not count upon an assignment of the policy, and under it he would have no right to go to the jury on any case other than the sole ownership of the property by himself, and insurance

made to and held by him as such owner. The transfer of the policy to Carroll so as to insure him, with loss payable to the plaintiff, as his interest might appear, makes it a contract of insurance between the company and Carroll, and not between the company and plaintiff. This charge, as given by the court, places the right of recovery on the ground that the plaintiff sues upon a cause of action which Carroll had against the defendant, which right of action had been assigned to the plaintiff. No such claim is stated in the declaration, and upon that theory no recovery could be had. *Clay Fire & Marine Ins. Co. v. Huron Salt & Lumber Mfg. Co.*, 31 Mich. 346.

Even if the declaration had counted upon the assignment, yet, from the undisputed facts in the case, plaintiff, standing in the shoes of Carroll, could not have recovered. The facts are that the house was kept by Carroll as a house of prostitution and lewdness, which, it is conceded, would render the fire risk more hazardous, and would have forfeited the conditions of the policy as to increased risk. The question in the case which the court submitted to the jury was not whether Carroll kept it as a house of ill fame, but whether the plaintiff had knowledge of the fact, and, if he did not, then it would not work a forfeiture of the policy.

The court was in error in supposing that under such circumstances the plaintiff could recover.

For the errors pointed out the judgment of the court below must be reversed, with costs, and a new trial ordered.

The other Justices concurred.