HANCHETT *v.* FIDELITY & CASUALTY CO. OF NEW YORK.

PRINCIPAL AND SURETY—BONDS—LIMITATION OF ACTIONS—WAIVER.
In an action against a surety company on a bond for the faithful performance of a contract for the construction of a highway, evidence that defendant's claim attorney, after notice of default, asked plaintiff not to do anything until he heard further from defendant, and nothing further was heard from defendant until after suit was brought, *held*, to sustain a finding that there had been a waiver of the limitation period named in the bond within which the parties had contracted that suit must be brought.

Error to Shiawassee; Collins (Joseph H.), J. Submitted April 9, 1920. (Docket No. 36.) Decided June 7, 1920.

Assumpsit by Arthur J. Hanchett against the Fidelity & Casualty Company of New York, surety, and Arthur L. Waldorf, principal, on a bond. Judgment for plaintiff. Defendant surety brings error. Affirmed.

*Cummins & Nichols,* for appellant.

*Pulver & Bush,* for appellee.

MOORE, C. J.   In May, 1917, plaintiff made a contract with the board of county road commissioners for the construction of a section of highway for the sum of $16,500. Later plaintiff sublet to Mr. Waldorf the work of graveling said road for the sum of $12,400. Mr. Waldorf furnished a bond to the principal contractor with the Fidelity & Casualty Company as surety thereon.   The bond contained the following:

"Legal proceedings for recovery hereunder may not be brought unless begun within twelve months from the time of the discovery of the act or omission of the principal on account of which claim is made. But if the surety shall assume the performance of the contract, the period within which legal proceedings for recovery hereunder may be brought shall be deemed extended twelve months beyond the date of failure of the surety to perform the said contract. If any limitation set forth in this condition is prohibited by the statutes of the State in which this bond is issued, the said limitation shall be considered to be amended to agree with the minimum period of limitation permitted by such statutes."

On January 19, 1918, the board of county road commissioners declared a forfeiture of plaintiff's contract based upon the failure of plaintiff and Waldorf to carry on the work. Plaintiff on January 31, 1918, notified the Fidelity & Casualty Company in writing at its Detroit office of the forfeiture, concluding his communication with the words:

"I do inform you as Waldorf's bondsman, I hold you responsible for the completion of said road for the sum named in his contract."

A representative of the surety company on February 20, 1918, wrote to the county road commissioners for Shiawassee county and the contractors a letter referring to this and other contracts, saying in part:

"Claim has been made in the above matter and the steps towards settlement now seem to be at a standstill.  *  *  *  Therefore, request is hereby made that the county road commissioners call a meeting for Tuesday, February 26, 1918, at 10:30 a. m., at the court house, Corunna, Michigan, and that you notify all interested parties to be present at the place and on the date stated so that this matter may be terminated. If the date is inconvenient or impossible for the meeting to be held, please advise the writer by return mail.

"Yours very truly,

"C. H. RUTTLE, Examiner."

Mr. Ruttle was an attorney at law and was at the head of the Michigan claim department of the surety company. Pursuant to his request the meeting was held and he there met the plaintiff. There appears in the testimony of Mr. Hanchett, when speaking of Mr. Ruttle, the following:

"He was getting acquainted around. I remember very distinctly of his turning to me and asking if my name was Hanchett. I said it was. He said 'I have a letter with me that we received from you.' He said it was pretty short and snappy and he also said to wait and not do anything until I heard from him and I said, 'All right.'"

There was other testimony along the same line. Some months after this it is said Mr. Ruttle left the employ of the surety company, leaving with his successor all his correspondence, books and reports. The plaintiff did not hear from Mr. Ruttle, his claim was not adjusted and he brought this suit June 26, 1919.

The principal defense is that the suit was not brought soon enough. The defendant asked for a directed verdict because the suit was not brought in time. The plaintiff claimed there had been a waiver of the limitation period named in the bond. The court overruled the motion of defendant surety company for a directed verdict and charged the jury fully upon the

question of the waiver, giving a request of defendant reading:

"I charge you that this action is barred by the provisions of the bond sued on limiting the time within which to bring suit within one year, unless you are convinced by a preponderance of the evidence that defendant's agent, Mr. Ruttle, requested plaintiff to not do anything until he heard from him, and that this request was the real reason why plaintiff did not bring suit within the year, and that but for such request, he would have actually sued before the year expired. Unless you do so find that he would otherwise have sued within the year, your verdict must be for the defendant no cause of action."

The jury returned a verdict upon which judgment was entered for nearly $2,900. The case is brought here by writ of error.

Counsel for appellant say:

"The sole question in the case is, whether there was any evidence tending to show a waiver of the limitation within which the parties had contracted that any suit must be brought. * * *

"The court correctly held that a waiver is a voluntary relinquishment of a known right and that there must be evidence from which it could be found that the defendant intended to waive the provision contained in the bond limiting the time within which suit must be brought or else the suit must fail.

"Was there any evidence to support such a finding? Is there any support for the inference that, on March 5, 1918, Mr. Ruttle thought about or had in mind the limitation which would not expire for ten and one-half months and intended to waive it? Surely there is no direct evidence to that effect. Do the circumstances justify that inference? We submit that the direct evidence, not only does not justify the inference but negatives it. * * *

"When these contracts were forfeited outside of the question of labor and material claims already accrued on the other two roads in which plaintiff was in no way concerned. the defendant company was confronted by the question of whether or not it would take

over the work of completing the contracts and this was a question which it would have to settle with a reasonable degree of promptness. The notice of forfeiture specified that the board itself would go on with the work after ten days but on March 5th the board was still willing that the company should take over the work, and at this meeting that was the only affirmative proposal under discussion. * * *

"As against the plaintiff these facts conclusively appear. On the 5th of March, 1918, the road commissioners were willing that the defendant company should take over and complete Mr. Waldorf's contracts. If it did so, plaintiff would have no claim against it whatever. It was considering doing that very thing and discussed it in plaintiff's presence. No other course of procedure was in any way discussed. If the company concluded to do this, it must be done within a short time as the contracts called for the completion of all the jobs by the following August. Not a word was said about the time limit for bringing suit. The expiration of the time limit was in no way imminent. The period within which suit must be brought had just begun to run and in the natural course of events by far the major portion of it would remain after the question of taking over the work had been settled and about half of it would remain even after the time for completion of the work had expired. They were talking about taking over the road and they were not talking about anything else that plaintiff had any interest in."

We think the above contention puts too narrow a construction upon what was discussed at the meeting.

Mr. Ruttle testified in part:

"*Q.* This talk you had with Mr. Hanchett do you recall that you informed him something about what you were doing here, what your work was?

"*A.* I think I explained that the day of that meeting what I was there for. I told him I was there investigating this case, trying to get the facts to find out if the notice that had been served on us by the road commissioners was true, that if there had been a failure of the contractors on these road jobs, and if there had been, how much of a failure there had

been, also the possibility of how the matter could be ironed out to the satisfaction of everybody and at the least possible expense. I think I explained that definitely that day and I think that was the occasion for my asking to have Mr. Roberts, civil engineer at Saginaw, also road builder, come down and look over these roads, inspect them and let us have a report as to what his ideas were on these roads, that is, whether there had been a failure to comply with the terms of the road building contracts.

"*Q.* And also in regard to taking over the roads possibly by the bonding company?

"*A.* That was talked at that time. That would all depend on whether we were satisfied there was a failure there. I think I said to the people that were there, the road commissioners and Mr. Hanchett and the people interested that the negotiations were at the stage where I couldn't possibly decide or determine upon the matter at that time, in substance.

"*Q.* Did you say, in substance, at that time also that you had to have more time in which to investigate?

"*A.* I did, because I wanted to have someone that I knew come down and look the jobs over.

"*Q.* I want to ask you after asking for more time in which to investigate this matter, did you yourself ever close the negotiations?

"*A.* No, sir.

"*Q.* Or end them?

"*A.* No, sir. I left the employ of the Fidelity & Casualty Company shortly after.

"*Q.* Before the negotiations were completed?

"*A.* Yes, sir.

"*Q.* Did you ever, to either the road commissioners or Mr. Hanchett, deny liability upon the bonds?

"*A.* I don't recall taking any step of that kind.

"*Q.* Do you recall also that at the time you were making this statement to the road commissioners and these parties assembled there to the effect you must have more time in which to negotiate, that you said to Mr. Hanchett in substance, personally directed to him, that you were investigating this matter and were going to send Roberts down from Saginaw and that you would like to have him wait and not do anything until he heard from you?

"*A.* I think that was true. I think that was the substance of what was said.

"*Q.* Just a general question on the subject of these negotiations for settlement. Do you know why nothing was done toward completing and adjustment of these matters by you?

"*A.* No, I don't. * * *

"*Q.* Was that the substance of the conversation between you and them that you agreed that there would be nothing done, no suits commenced until they heard from you?

"*A.* Yes, the situation was left exactly as it was that day pending the report and investigation by Mr. Roberts and that was to be considered by us and we were to let them know afterwards what we would do. That is the way it was left. * * * I think everybody agreed there that day that the matter was to rest there just as it was for the time being.

"*Q.* Until they heard from you?

"*A.* Yes, sir; until Mr. Roberts could go down and give us a report.

"*Q.* But no one knew anything about Roberts' report except you and the home office?

"*A.* I don't think he gave a copy of that report to anyone else. So far as I know Mr. Hanchett never knew anything about what conclusion we arrived at. I didn't at any time raise any technical claims or make any technical claim for defense in this case to Mr. Hanchett or the road commissioners."

Counsel for appellant say the case of *Dahrooge* v. *Insurance Co.*, 177 Mich. 442, is controlling. We think a reading of the opinion in that case will show it is readily distinguishable from the instant case. In the *Dahrooge Case* great stress was laid upon the fact that the insurance policy involved was a Michigan standard fire insurance policy, the form of which was compulsory upon the parties effecting the insurance. We think the instant case is more like *Turner* v. *Casualty Co.*, 112 Mich. 425, where Chief Justice LONG, speaking for the court, said:

"Afterwards, and on June 21, 1894, the plaintiff made a second statement of claim, which was for-

warded to the company by Camp & Brooks, his attorneys. In regard to this letter, the defendants wrote the following letter, dated July 2, 1894:

" 'Your favor of June 23d, inclosing claim blank regarding the above for an alleged injury stated to have been received February 10th, duly to hand. I beg to say that we have already received a claim blank from Mr. Turner for an alleged injury stated to have been received February 10th. We have already notified you that we fail to recognize any liability in that matter, and return the claim blank herewith. One of our adjusters will be in Saginaw shortly, and we will have him call upon you, and discuss this matter with you. We think he will be able to show you that there is a breach of warranty in Mr. Turner's application, and therefore no liability on the part of the company under the policy Mr. Turner holds. Kindly allow the matter to rest until our adjuster can see you, and oblige.'

"Nothing more was done by either party until this suit was commenced, February 4, 1896.

"The first assignment of error relates to the refusal of the court to direct a verdict for the defendant, on the ground that the suit was not commenced within one year from the date of the injury. The policy provides that 'unless affirmative proof of death or duration of disability is so furnished within seven months, and any legal proceedings for recovery hereunder is begun within one year, from the time of such accident, all claims based thereon shall be forfeited to the company.' The claim of plaintiff is that the letter above quoted written to Camp & Brooks, constitutes a waiver of this clause of the policy. On the other hand it is contended that inasmuch as, during the time from the receipt of the letter to the commencement of suit, no adjuster of the company called upon plaintiff or his attorneys, and there was no communication of any kind between them on the subject of the adjustment of the claim, the plaintiff was not justified in waiting a year and a half before bringing suit; and again, that the statement in the letter requesting him to let the matter rest would not warrant or justify the plaintiff in permitting the year to go by without bringing his suit if he desired to protect his rights; that the plaintiff might have been justified in waiting a reasonable time after receiving the letter before tak-

ing action, but not in waiting the time he did, as the letter held out no hope or promise of an adjustment, but merely asked that an opportunity might be given the company to explain why liability was denied.

"This clause in the policy, however, was one which could be waived by the company. It cannot be construed as a limitation fixed by law. While the plaintiff was not bound to wait before bringing suit, yet it is apparent that he did wait at the request of the company. He testified that the reason he did not begin his action within the 12 months was because of the receipt of the letter of July 2d. Such clauses in policies of insurance, while held valid as contracts, may be waived by the company. The law does not favor clauses of limitation in policies of insurance, and they are strictly construed and it does not require the positive act of the company inducing postponement; but, where the evidence is conflicting, the question of waiver is one for the jury. We think, however, in this case that there is no conflict in the evidence, and that the letter was positive in its terms, asking that the matter be allowed to rest until the adjuster of the company could see the plaintiff or his attorneys. As was said in *Bonenfant* v. *Insurance Co.*, 76 Mich. 657:

"'Forfeiture is not favored either in law or equity, and a provision for it in a contract will be strictly construed; and courts will find a waiver of it upon slight evidence, when the equity of the claim is, under the contract, in favor of the assured.'

"See, also, *Lyon* v. *Insurance Co.*, 55 Mich. 146 (54 Am. Rep. 354), and cases there cited; *Peoria, etc., Ins. Co.* v. *Hall*, 12 Mich. 202; 2 May, Ins. § 488; *German Fire Ins. Co.* v. *Carrow*, 21 Ill. App. 631; *Thompson* v. *Insurance Co.*, 136 U. S. 287 (10 Sup. Ct. Rep. 1019)."

See, also, *Dolsen* v. *Insurance Co.*, 151 Mich. 228; *Mastenbrook* v. *Accident Ass'n*, 154 Mich. 16.

Judgment is affirmed, with costs to the plaintiff.

STEERE, BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.