H. B. FITZSIMMONS *v.* ALLIANCE FIRE INSURANCE COMPANY OF PHILADELPHIA

(No. 7831)

Submitted May 15, 1934.   Decided June 15, 1934.

*B. S. Honecker* and *Jay T. McCamic,* for plaintiff in error.

*Erskine, Palmer & Curl,* for defendant in error.

HATCHER, JUDGE:

This is an action upon an insurance policy to recover for the loss of a truck by fire. The case was tried twice in the circuit court. At the first trial a verdict for the plaintiff was set aside by the trial court on the sole ground (as shown by a written memorandum) that a sworn statement of the loss—as required by the policy—had not been rendered by the plaintiff or waived by the defendant. At the second trial the case was submitted to the court, in lieu of a jury. The court found for the defendant and gave (in writing) the same reason advanced in setting aside the verdict at the first trial.

The plaintiff makes no claim that he rendered a sworn statement. He relies on the words and conduct of defendant's agents, W. F. Dorer, Mrs. Marcella Baker and J. M. McFadden, as constituting a waiver of his oath. The first two were local agents of the defendant at Wheeling. Dorer executed the policy in question. Both he and Mrs. Baker were authorized to solicit insurance, execute policies and receive notices of losses. The evidence is explicit and uncontroverted, however, that they had no authority to adjust losses. The plaintiff places some reliance on the fact that Dorer handed him a check from the defendant for a former fire loss. Dorer did not testify, but Mrs. Baker testified of her "own knowledge" that the mere manual delivery of the check was all that Dorer had to do with the former transaction.

The truck was burned on September 23, 1929, and the plaintiff phoned the occurrence to Mrs. Baker the next day. At her request he came to her office and made a formal report of the accident, which she forwarded to the defendant. A few days afterwards McFadden phoned plaintiff from Pittsburgh stating that he represented the defendant and requesting further details. The plaintiff promptly mailed McFadden a signed statement containing what McFadden himself said was *full information of the accident*. On October 26, 1929, Dorer wrote plaintiff enclosing a letter to himself from McFadden. Dorer's communication referred to McFadden's letter not as

from McFadden *but as from the company*. The enclosure was written from Pittsburgh upon a letterhead of the defendant. In addition to defendant's name the following was printed on the letterhead: "J. M. McFadden, Special Agent". The enclosure directed Dorer to call plaintiff's attention to the policy provision requiring salvage to be protected, and contained the following statement: "Owing to the fact that this loss occurred in direct violation of the provisions of the policy, I have referred the matter to our Home Office for advice." McFadden interviewed plaintiff personally about the middle of November, and questioned him at length about the accident, his business and his finances, and what the truck cost and its value when burned. When the interview ended, McFadden stated to plaintiff that under the policy defendant had sixty days after the loss in which to determine its course, that the sixty days was about up, and when that period expired the loss would either be paid or contested. McFadden did not deny this statement. He testified that he was "special agent and adjuster" of the defendant; that he so represented himself to plaintiff, and that plaintiff dealt with him as such; but that he did not have authority to settle "in this particular case * * * because", as he says, "I reported the circumstances as I found them on my preliminary investigation, and was instructed by the home office to make no settlement." (He referred elsewhere to his interview with plaintiff the middle of November as *a preliminary investigation*.) He introduced with his testimony the several written statements of loss furnished by plaintiff. He admitted never asking for another statement or asking plaintiff to make oath to any of the statements furnished.

Proof of loss is ordinarily treated as a prerequisite to the insured's right to recover; but proof may be waived by the insurer. *Penins. L. Co.* v. *Insurance Company*, 35 W. Va. 666, 14 S. E. 237. This Court said in *Lusk* v. *Insurance Company*, 80 W. Va. 39, 43, 91 S. E. 1078, 1080, that if the conduct of the insurer was such as reasonably to induce the insured to believe that no formal proof would be required, "such conduct will operate to excuse

non-compliance." That statement is in accord with general law. See Cooley's Briefs on Insurance (2d Ed.), p. 6010 (g); Couch Cyc. of Ins., sec. 1577; 26 C. J. 396; 14 R. C. L. 1347. McFadden was held out by defendant as its special representative. His letter in October, 1929, to Dorer, was treated by Dorer in his communication to plaintiff as the very letter of defendant itself. The company must have clothed McFadden with full authority to handle such cases, or permitted him to assume such authority in order to cause Dorer (its own agent) to represent McFadden's letter to plaintiff as the letter of the company. From that letter plaintiff learned that McFadden had sought advice regarding this loss from defendant's home office. Despite any limitation which the designation "Special Agent" might otherwise imply, it was natural under those circumstances for plaintiff to infer that the conduct of McFadden accorded with that advice. The plaintiff had no reason to question the position of McFadden with the company as pictured by both McFadden and Dorer. In fact if McFadden's authority was not limited until after his self-termed "preliminary investigation" in November, then his authority was not restricted until after he ceased communicating with plaintiff. When McFadden called for and accepted without objection the additional statement of loss from plaintiff, it was reasonable for plaintiff to assume that the form of the statement was satisfactory. When McFadden assured plaintiff in November that the loss would either be paid or contested within a few days, it was reasonable for plaintiff to conclude that he had done all required of him, and had only to await the final decision of the company.

We are therefore of opinion that the conduct of McFadden excused the non-compliance of the plaintiff.

The defendant advances a number of reasons why plaintiff should not recover; but since the circuit court decided against plaintiff on the one point heretofore discussed, we reverse and remand the case without consideration of any but that point.

*Reversed and remanded.*