VICTORIA ANTONOWICH *v.* HOME LIFE INSURANCE COMPANY

(No. 8000)

Submitted February 26, 1935. Decided March 12, 1935.

156

*Capehart & Miller*, for plaintiff in error.
*Strother, Curd & Berry*, for defendant in error.

HATCHER, JUDGE:

Plaintiff, as beneficiary, seeks to recover upon a life insurance policy issued by defendant to Andy Antonowich, her deceased husband. The trial court set aside a verdict in her favor and she secured a writ of error.

The policy (for $1,500.00) was taken out in 1927. The assured paid the premiums until November, 1929, when his back was incurably broken. He was helpless from that time until his death in July, 1933. No payments were made after his injury but the automatic premium loan and the "grace period" continued the policy in force until November 20, 1930. The policy covenanted that after one full annual payment should have been made, and before default in any subsequent premium, the insurer would waive payment of further premiums and would pay insured a monthly income of one per cent of the face of the policy, if (in the language of the policy) "due proof shall be furnished to the company at its home office

in the city of New York, that the insured has become totally and permanently disabled."

Defendant pleaded that the policy expired in November, 1930, because the assured neither paid any further premiums nor furnished it with proof of his disability. Plaintiff responded (in statutory form) that defendant had been notified (by letters) of assured's condition, in January, 1930, and August, 1930, and that the failure of defendant to answer and to furnish the assured with a blank form requested in one of the letters constituted a waiver of proof. Defendant denied receipt of the letters. The order of the trial court setting aside the verdict gave the following reason: "* * * in view of the denial of receipt of the letters by the defendant, same conclusively rebuts the presumption arising from the testimony in plaintiff's behalf of the writing and mailing of same, and such evidence does not make a question for jury determination, and is insufficient to support the verdict."

The wife of the insured could not read or write. She testified that she directed her daughter by a former husband, Katherine Carmen, to write to the insurance company in January, 1930, of Andy's condition and saw her write the letter; and knows that Katherine wrote the company again (under the instruction of Andy) in August, 1930.

Katherine testified that she wrote the company the letters of January and August, 1930, to which her mother referred; that in the January letter she informed the insurance company (in the language of the witness) "where my father was, stepfather, (in the Mountain State Hospital at Charleston, W. Va.); and that he had a broken back and was badly hurt and I asked them for a blank for a doctor to fill out, and that they would send us one per cent of the policy"; that she addressed the letter to the same address given on "the premium notice"; and that she put a two-cent stamp on the letter and mailed it herself. As to the letter in August, she merely said that she again explained her "father's condition" to the defendant, and that she also stamped and mailed the second letter herself. At the time of these alleged communications she was about fifteen years old.

For the defendant, Mary A. Carlier testified that she was in

charge of the defendant's reinstatement department at its home office; that the Antonowich case was referred to her as a lapsed case on November 28, 1930; that she wrote the insured on December 2, 1930, suggesting reinstatement and enclosing an application blank; that the blank was returned to the company on December 6, 1930, unsigned, stating that the assured had been ''injured in mine'' and ''he cannot sign this as he is in the hospital yet in Charleston, W. Va.''; and that this blank was the only information which the Antonowich file showed as to his disability: (Katherine Carmen said that she wrote the statements on the blank.) Theodore Stemmerman, an assistant actuary of the defendant, also testified in its behalf. He is in charge of a number of divisions at defendant's home office, among which is the disability division. He said that he had gone over the records of the company since 1929 in reference to Andy Antonowich, and that the records disclosed no claim for disability benefits by or on behalf of him. Further the witness asserted flatly that the company had received no such claim. (He gave no other reason for his assertion than his examination of the records.)

When a letter is properly addressed, stamped and delivered to the postal authorities, the rule is well settled that a rebuttable presumption arises of its delivery to the addressee. 22 C. J., subj. Evidence, sec. 36; 21 R.C.L., subj. Post Office, sec. 36; Moore on Facts, sec. 551. The defendant contends that the evidence of Miss Carlier and Mr. Stemmerman rebuts as a matter of law the presumption in favor of plaintiff arising from the testimony of Katherine Carmen. Neither one of defendant's witnesses, however, testified that he or she received the defendant's mail from the postman, or distributed the mail to the several divisions of the company, or properly filed its letters. Without evidence of such details, the defendant's proof is not of that high degree which warranted the trial court in holding as a matter of law that the defendant conclusively rebutted the presumption of having received the Carmen letters. In such case the weight of the rebuttal evidence is ordinarily a jury question—here decided against the defendant. *Rosenthal* v. *Walker*, 111 U. S. 185, 4 S. Ct. 382, 28 L. Ed. 395; *Bank* v. *Trust Co.*, 258 Mich. 526, 242 N. W.

739; *Bank & Tr. Co.* v. *Central St. Bank* (Texas), 281 S. W. 632; 21 R.C.L., *supra,* sec. 40; 22 C. J., *supra,* sec. 44.

The defendant would defeat this specific action on the ground that no formal proof of the death of the insured was transmitted to it before the action was instituted, as the policy requires. The defendant did receive timely notification of his death from plaintiff's counsel; and it did not specify the omission of such proof in its written statement of defense. Code, 56-4-21, dispenses with proof of the observance of any condition (in the policy) unless non-compliance is charged by the defendant in that statement. "The statute does not shift the burden of proof, but it does dispense with proof of observance of a clause or condition, when there is no statement calling that particular clause or condition in question." *Rosenthal* v. *Ins. Co.,* 55 W. Va. 238, 241, 46 S. E. 1021. Accord: *Teter* v. *Ins. Co.,* 74 W. Va. 344, 348, 82 S. E. 40.

The testimony of Katherine Carmen, quoted in the statement of this case, embraces her entire description of the alleged letters. The defendant contends that the letters so described—even if received by it—were too indefinite to charge it with information concerning Antonowich. Katherine does not say specifically how her alleged letters were signed, if at all, or whether she referred to the assured by name or merely as father or step-father. While the inference to be deduced from evidence is ordinarily a question for the jury, the sufficiency of the evidence to warrant the inference is a question of law for the court. 64 C. J., subject Trials, sec. 317. The fact inferred should attend naturally and rationally the fact proven. *Central of Ga. Ry. Co.* v. *Teasley,* 187 Ala. 610, 617, 65 So. 981. "It is not enough that the facts proven permit an inference of a certain other fact sought to be established, but the inference must be the only one which can fairly and reasonably be drawn from the facts. * * * And naturally so, else the jury would be free for guesswork." *O'Reilly* v. *Rr. Co.,* 81 N. Y. S. 572. Accord: *Sims* v. *Bank,* 8 W. Va. 274; *Moore* v. *Heat & Light Co.,* 65 W. Va. 552, 558, 64 S. E. 721; *Miller* v. *Gas Co.,* 88 W. Va. 82, 106 S. E. 419; *Legg* v. *Mercantile Co.,* 105 W. Va. 287, 142 S. E. 259. Katherine was a

child of fifteen years when the alleged letters were written. She is not shown to have had at that time any familiarity with business or business correspondence. Her inexperience is demonstrated by her failure to sign her name to her statements on the application blank returned to the defendant in December, 1930. It is not permissible to draw the inferences in relation to the letters of one so immature which would seem natural in relation to the letters of one more experienced. Moreover, the very fact that she was not asked to give more definite information as to the letters opposes a favorable inference if it does not actually raise a hostile presumption. If the letters referred to the assured merely as her *father* or *step-father,* which hypothesis is just as reasonable as that they referred to him as Antonowich, they afforded the defendant no information of who he was. Without that information, there could be no waiver herein. Since the evidence is uncertain and inconclusive on this vital question, the verdict is not sustained and was properly set aside. "No inference of fact or of law is reliable, drawn from premises which are uncertain." *U. S.* v. *Ross,* 92 U. S. 281, 283-4, 23 L. Ed. 707. Accord: *St. Louis Rr. Co.* v. *Laundry,* 42 Okla. 501, 503, 141 P. 970; *Cobb* v. *Hartenstein,* 47 Utah 174, 152 P. 424; *Robinson* v. *Rr. Co.,* 40 W. Va. 583, 21 S. E. 727; *Chambers* v. *Lighting Co.,* 81 W. Va. 714, 95 S. E. 192. This case presumably will be tried again; so we deem it proper to comment further on the issues.

We have found no authority holding that a bare statement of an injury such as contained in the alleged letters of January and August, 1930, complies with the requirement of "due proof" in an insurance policy, as plaintiff contends. A leading case on this subject is *O'Reilly* v. *Ins. Co.,* 60 N. Y. 169, 172-3, 19 Am. Rep. 151. There the court rejected an informal letter as proof, saying: "The bare statement of one of known character for truth might convince one who knew him of the reality of the facts stated by him, but it would not be proof in any proper sense. * * * Proof * * * must mean evidence in some form, such form as is usual and customary in such cases, or as is recognized by law." In a strong concurrence Freeman says: "Common sense must tell us that proof means more than an unverified statement * * * and that the word cannot

possibly be defined as *ejusdem generis* with notice." Annotation, 137 Am. St. Rep. 720. Accord: *Eq. Society* v. *Dorriety*, (Ala.) 157 So. 59; *Jarvis* v. *N. W. Assn.*, 102 Wis. 546, 78 N. W. 1089, 72 Am. St. Rep. 895; *Bank* v. *Eq. Society*, 112 Va. 462, 71 S. E. 647; Cooley's Briefs on Insurance (2d. Ed.), p. 5891. *Da Rin* v. *Cas. Co.*, 41 Mont. 175, 108 Pac. 649, a case relied upon by plaintiff, supports instead of opposes the above. The opinion is careful to explain: "A mere informal notice does not ordinarily supply the place of formal proof."

When proof by the insured is denominated in the policy, the insurer is entitled to it. *Iannarelli* v. *Ins. Co.*, 114 W. Va. 88, 171 S. E. 748. But the insurer may waive it. Cooley, *supra*, page 5943; Couch Cyc. of Ins. Law, sec. 1560. Such proof is rarely accepted as conclusive. The insurer usually makes its own investigation. In cases where it does so, proof furnished by the insured serves the insurer little, if any, better than an informal notice. Therefore, as Freeman says, this formality "is one which the insurer may easily waive," and "any conduct of the insurer calculated to induce delay or the belief that strict compliance will not be called for amounts to a waiver." See the Annotation, *supra*, and the many cases cited on pp. 731-2. That doctrine has been long recognized by this Court. *Penins. Co.* v. *Ins. Co.*, (1891) 35 W. Va. 666, 14 S. E. 237; *Fitzsimmons* v. *Ins. Co.*, 115 W. Va. 303, 175 S. E. 62. The authorities are not in harmony on the effect of the insurer ignoring the request of the insured to furnish a blank (not a policy requirement). There is ample precedent, however, for holding that such conduct constitutes a waiver. "An accident insurer cannot defeat a claim for insurance on the ground that there was no proof of loss where the assignee of insured made application for blanks upon which to make the proper claim and was refused." *Inter. Ass'n.* v. *Powell*, (Tex.) 196 S. W. 957. Accord: *Stepp* v. *Ass'n.*, 37 S. C. 417, 16 S. E. 134; *Pray* v. *Ind. Co.*, 104 Iowa 114, 73 N. W. 485; *Davis* v. *Ins. Co.*, 221 Mo. App. 798, 288 S. W. 80, 83; *Murdie* v. *Cas. Co.*, 52 F. (2d) 888; *Ins. Co.* v. *Williams*, 48 Ga. App. 10, 172 S. E. 101; and (generally) May on Ins. (4th Ed.), sec. 468. Ignoring a request for a blank would generally have the same effect as refusing it.

There is an inherent equity in plaintiff's position. Total and permanent disability—the very risk which Antonowich paid defendant to assume—occurred. His misfortune is not questioned by the defendant. Its liability had accrued potentially. The only thing to be done by the assured to make that liability actual was to lodge with the defendant formal proof of the disability. The situation calls for great liberality in favor of the beneficiary. *Pfeiffer* v. *Ins. Co.*, 174 Ark. 783, 297 S. W. 847.

> "In determining the liability of the defendant (insurance company), it is entitled to the benefit of its contract fairly construed, and can stand upon all its stipulations. But where its liability has become fixed by the capital fact of a loss, within the range of the responsibility assumed in the contract, courts are reluctant to deprive the insured of the benefit of that liability by any narrow or technical construction which prescribes the formal requisites by means of which the accrued right is to be made available for his indemnification." *McNally* v. *Ins. Co.*, 137 N. Y. 389, 398, 33 N. E. 475.

The manifest object of the alleged letters was to initiate steps for fixing the liability of the defendant. The obvious purpose of the alleged request for a blank "for a doctor to fill out" was to secure a form which when executed by a physician would be acceptable to defendant as proof. If the letters in fact specified Antonowich, and if defendant received them and failed to respond, such failure would naturally induce delay and would be reasonably calculated to engender the belief that defendant waived the execution of such a blank as the assured proposed. In such cases an abundance of proof is not required to imply waiver. *Bonenfant* v. *Ins. Co.*, 76 Mich. 653, 43 N. W. 682.

The judgment of the circuit court is affirmed.

*Affirmed.*