WAYNE v. NEW YORK LIFE INS. CO.
NEW YORK LIFE INS. CO. v. WAYNE.
Nos. 12292, 12293.

Circuit Court of Appeals, Eighth Circuit.
Dec. 14, 1942.
Rehearing Denied Jan. 7, 1943.

**13. Insurance** ☞668(1)

30

See, also, D.C., 3 F.R.D. 202.

Daniel L. Brenner, of Kansas City, Mo. (Cornelius Roach, J. H. Greene, Jr., and Roach & Brenner, all of Kansas City, Mo., on the brief), for Jacob Wayne.

Richard S. Righter, of Kansas City, Mo. (R. Arch Smith and Rudolph Heitz, both of Kansas City, Mo., on the brief), for New York Life Ins. Co.

Before GARDNER, WOODROUGH, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by Jacob Wayne against the New York Life Insurance Company on an insurance contract to recover certain disability benefits and premiums paid during his alleged total permanent disability. It will be convenient to refer to the parties as they appeared in the lower court. Plaintiff recovered judgment for the disability benefits claimed and defendant has appealed from that judgment. Plaintiff, after entry of judgment, made a motion to enter judgment in conformity with the jury's answers to certain special interrogatories, and from the order denying his motion he has appealed. We shall first give consideration to defendant's appeal.

On March 19, 1917, defendant issued to plaintiff the policy of insurance upon which this action was based. It contains provision for disability benefits payable annually, and for waiver of premium in the event of disability. Section 1 of the policy provides that: "Whenever the Company receives due proof, before default in the payment of premium, that the Insured has, subsequent to the delivery hereof, become wholly disabled by bodily injury or disease so that he is and will be presumably thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days * * * the Company will on each anniversary waive payment of the premium for the ensuing year, and, in any settlement of the policy, the Company will not deduct the premiums so waived. * * * the Company will pay the Insured one-tenth of the face of the policy, and a like sum on each anniversary thereafter during disability until the face of the policy has been paid. After the face amount has been paid in instalments, the Company will continue to pay a sum equal to one-tenth of the face amount annually during the remainder of the lifetime and continued disability of the Insured." Other provisions are not here material.

Plaintiff alleged that he became wholly disabled on February 5, 1928, when he was 52 years old, and was thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit; that he had furnished all proof required by defendant but defendant had failed to perform its contract. He sought to recover for thirteen years' disability benefits at $200 per annum and asked

also for judgment for nine years' premiums paid, amounting in the aggregate to $806.04, plus ten per cent penalty for defendant's vexatious refusal to pay, besides $1,500 attorney fees.

Defendant's answer set up four defenses, all of which, save one, have now been abandoned. The fourth defense in effect challenged the sufficiency of the proof of disability and pleaded that plaintiff was estopped to claim that the oral notice alleged to have been given in December, 1929, was binding upon it. The grounds for the claim of such insufficiency are elaborated in the answer.

The court submitted five interrogatories to be answered by the jury, four of which were answered in such a way as to render the answer to the fifth unnecessary. The jury found the issues in favor of the plaintiff, assessed his damages for benefits and premiums paid at the sum of $2,200, and found under the instructions of the court that plaintiff was entitled to recover attorney fees in the amount of $1,125. Further reference will be made in the course of this opinion to the answers to the special interrogatories.

In February, 1928, as determined by the verdict of the jury, plaintiff became seriously ill and consulted and was attended by a number of physicians. He was advised by his physician that he must discontinue work and since that date he has not been able to perform any work. He was then 52 years of age, and from February, 1928, has been and is totally and permanently disabled. He paid all premiums on this policy up to and including March 19, 1938. He was also insured by another policy issued by defendant which contained no disability provisions. In December, 1929, plaintiff and his wife went to the office of the defendant company in Kansas City, Missouri, and there talked with one Mike McKinney, who was cashier for the defendant and whose duty it was to collect premiums, make loans on policies of insurance, and handle disability claims for the company. Plaintiff, in the presence of his wife, told Mr. McKinney that he was and had been totally disabled for more than two years and believed he had disability benefits due him on his policy of insurance and if so he wanted to make claim for such disability benefits. McKinney said he would check his records and see if he had any disability benefits on his policies. He left the room and in a few minutes returned, reporting that plaintiff

had no such disability benefits. McKinney told plaintiff that his policies had some cash value on which he might borrow money, and subsequently plaintiff did borrow money on the policy not involved in this action.

In May, 1940, a relative of plaintiff visited him and asked if he did not have disability benefits in his policies with the defendant. Plaintiff then brought out the policies for examination and the disability provision was found in one of the policies. Plaintiff went immediately to the office of defendant and inquired of R. M. Wells, one of defendant's cashiers, as to why he had not been told that he had disability benefits under one of his policies when he had made inquiry about it several years ago, and was told by Mr. Wells that the company was under no obligation to tell him about his policies. Plaintiff then again requested that he be paid all benefits to which he was entitled under his policies and he was furnished blanks on which to submit formal proofs. Proofs in the form indicated by the blanks were filed June 28, 1940. These proofs indicated that plaintiff had been totally and permanently disabled from February 6, 1928. On July 8, 1940, defendant wrote to plaintiff, advising that the company had completed its investigation with respect to his claim for disability benefits but that from the information obtained it did not appear that he was totally and permanently disabled within the meaning of the disability provisions contained in the policy, prior to the date on which the insured attained age 60. The claim was accordingly disallowed. Plaintiff became 60 years of age in December, 1935. He commenced this action following the receipt by him of the letter denying liability.

Special interrogatory No. 4 was as follows: "Has plaintiff been totally disabled since February, 1928, and until July, 1940, from performing in the usual and customary way substantially all the material acts of any occupation in which otherwise he would have been able to engage? The jury answered: "Yes." It also answered in the affirmative an interrogatory which inquired whether plaintiff asked McKinney on December 18, 1929, if any of his policies issued by the defendant contained disability benefits and advised McKinney that he was and for approximately two years prior thereto had been totally disabled and desired to claim disability benefits if any of his policies provided therefor. The jury also answered in the affirmative an interrogatory as to whether McKinney, in the con-

versation referred to, on December 18, 1929, advised plaintiff that he did not have a policy of insurance with the defendant company which contained a provision for disability benefits.

At the close of all the testimony, defendant moved for a directed verdict, which motion was denied.

On this appeal defendant seeks reversal of the judgment entered against it on substantially the following grounds: (1) The plaintiff's conversation with McKinney did not constitute due proof of disability and plaintiff is estopped to claim and has waived the right to claim that the conversation with McKinney was due proof of disability; (2) the court erred in submitting to the jury the issue of vexatious refusal to pay; (3) the Missouri five year statute of limitations has run against all but one of the premiums plaintiff seeks to recover. Counsel for defendant in their brief assert that: "The principal question in this case is whether he also submitted 'due proof' of his alleged disability within the meaning of the policy in the month of December, 1929."

■■■ In view of the verdict of the jury, we must resolve all conflicts in the evidence in favor of plaintiff and the evidence must be viewed in a light most favorable to his contentions. He is entitled to the benefit of such favorable inferences as the jury might reasonably have drawn from the evidence. Chicago, M., St. P. & P. R. R. Co. v. Linehan, 8 Cir., 66 F.2d 373; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. Defendant urges that there was no substantial evidence of due proof of disability submitted prior to the formal proof filed with the company on June 28, 1940. The requirement of the policy is that the company be furnished "due proof" of the claim. The policy does not specify the manner in which this proof must be furnished, nor whether it shall be in the form of writing. Insured *is* entitled to a liberal construction of this phrase "due proof." Liverpool & London & Globe Ins. Co. v. Dillon, 4 Cir., 16 F.2d 774; Feinberg v. New York Life Ins. Co., 233 Mo.App. 707, 127 S.W.2d 82; Hablutzel v. Home Life Ins. Co., Mo.App., 52 S.W.2d 480; Hablutzel v. Home Life Ins. Co., 332 Mo. 920, 59 S.W.2d 639. The Missouri Court of Appeals, in Feinberg v. New York Life Ins. Co., supra, considered a case in which the wife of plaintiff informed a soliciting agent of the defendant that her husband was sick, and the agent said the policy car-ried a disability clause and that he would file claim, and later told her it was receiving attention. The evidence showed that this agent handled disability claims arising under policies written by him to the extent of reporting them to the company. Upon receipt of information of a claimed disability, the custom of the company was to submit claim papers in the nature of questionnaires to the insured and to his attending physician. In the course of the opinion the court said [233 Mo.App. 707, 127 S. W.2d 92]: "Furthermore, we believe it may fairly be said that it is a matter of common knowledge that this is the practice of insurance companies generally." In holding that the insured had complied substantially with the requirement that he furnish "due proof" of disability, the court said: "After receipt of the notice, the insurance company is entitled to have from the insured such information as is reasonably necessary for it to determine whether or not a condition exists which gives rise to its obligation under the disability provisions of a policy. The insurance contract providing for 'due proof' means just this. It seems to us that, in view of this admitted practice, an insurance company, upon receipt of notice of disability, is under a duty to advise the insured as to information or proof that it requires as to his claimed disability, and that if it fails so to do within a reasonable time it cannot, by virtue of such failure, escape its obligation to waive premiums and pay disability benefits on the ground that the insured has failed to furnish 'due proof.' "

In Hablutzel v. Home Life Ins. Co., supra, plaintiff claimed disability benefits. His wife went to the office of defendant and talked to the local cashier about an extension of time for the payment of premiums and was told that the company would allow an extension of time for the payment of premiums and would allow an extension during the thirty days of grace provided by the policy. During the conversation she told the cashier that the insured was permanently disabled and that the doctor did not expect him to live. The court held that the conversation constituted due proof of disability, finding that defendant was thus put in possession of all the facts essential to make out a prima facie case requiring a waiver of the premium. On appeal the case was affirmed by the Supreme Court (332 Mo. 920, 59 S.W.2d 639), although the reasoning of the Supreme Court is not the same as that employed by

the Court of Appeals. In the late case of Feinberg v. New York Life Insurance Co., supra, the decision of the Court of Appeals in the Hablutzel case is quoted with approval on the question of "due proof."

■ In the instant case, a witness for defendant testified that defendant acted upon oral information of disability by handing a form to the insured to be filled out by him and his doctors and that this was defendant's practice. This brings the case within the rule and reasoning of the Feinberg case, supra. Here, defendant was informed of plaintiff's total disability, or at least of facts amounting to that. It made no objection to the form or sufficiency of the proof as made. In these circumstances, the proof should either be considered as sufficient, or it should be held that defendant has waived further proof. Jacoby v. New York Life Ins. Co., 229 Mo.App. 333, 77 S.W.2d 840; Hablutzel v. Home Life Ins. Co., Mo.App., supra; Antonowich v. Home Life Ins. Co., 116 W.Va. 155, 179 S.E. 601. If the terms "notice" and "due proof", as used in this policy, are indistinguishable, then the language is ambiguous and must be construed in a light most favorable to the insured. Wharton v. Aetna Life Ins. Co., 8 Cir., 48 F.2d 37; American Surety Co. v. Normandy State Bank, 8 Cir., 108 F.2d 819.

■ It is urged by defendant that in the Feinberg case the insurer's agent knew there was a disability provision in the policy, while in this case the evidence shows that McKinney did not know that the policy contained such provision, but where an insured, after delivery to and retention of a policy for a long period of time, claims to be entitled to a different contract than that given him, he is held to a knowledge of the terms of the contract in his possession. So, also, must the insurer know the terms of the contract. There is no impeachment of authority in McKinney to act for the insurer in matters pertaining to disability claims under such policies as plaintiff had. The verdict of the jury determines that he had full authority to receive proofs and to advise with the insured pertaining to disability claims. While he as an individual may not have known or may have been mistaken as to the presence of a disability clause in the policy issued to plaintiff, yet he was acting for a principal that knew and acted within the scope of his authority. The principal can not, therefore, say that the agent did not possess all the information it possessed concerning this contract. Where a principal clothes its agent with apparent authority to act in certain capacity, it is bound by all the acts of such agent within the scope of such authority. Third persons dealing with an agent possessing such authority are not bound by secret limitations on such apparent authority. Knowledge of the principal acting through an authorized agent can not be denied because of the lack of knowledge of the particular individual acting as agent. Here, the agent acting in the scope of his authority, acquired knowledge that the insured was totally and permanently disabled, or was claiming to be so disabled. A person to be affected by notice may authorize an agent to receive it for him and delivery of notice to the agent is under such circumstances delivery to his principal. Peterson v. Kansas City, 324 Mo. 454, 23 S.W.2d 1045. Knowledge and notice acquired by an agent acting in the scope of his authority is knowledge and notice to the principal. Fitzgerald v. Colorado Life Ins. Co., 233 Mo.App. 235, 116 S.W.2d 242.

Conceding that plaintiff should have known the contents of his policy, the defendant likewise knew. It knew that he had given notice of a claim for total and permanent disability and it did not act upon it. Instead, it denied its liability by claiming that the policy contained no provision for disability benefits. We conclude that plaintiff gave "due proof" of total permanent disability within the meaning of the policy.

■ It is urged that plaintiff should be estopped to claim that he had made such proof because of the time elapsing between the conversation of December, 1929, and the proof of disability made on blanks furnished in the year 1940; but plaintiff, having made "due proof" in 1929, was under no further obligation to furnish proof. His rights to claim disability benefits under the policy were perfected when this proof was made, and no significance attaches to the fact that proof of disability was made on blanks furnished him by the defendant in 1940. Estoppel by laches is an equitable doctrine. This is an action at law in which the time within which the claim may be asserted is fixed by legislative enactment in the statutes of limitations, as distinguished from limitations applicable in

suits in equity. City of Roswell v. Mountain States T. & T. Co., 10 Cir., 78 F.2d 379; Virginia C. M. M. & Smelting Co. v. Clayton, Mo.Sup., 233 S.W. 215. Defendant does not now seriously contend that the statute of limitations has run against the cause of action pleaded. The policy contains no provision for a forfeiture of rights if suit is not filed within a reasonable time after the making of due proof, and we can not, in an action at law at least, reform the contract. Plaintiff in his discretion had a right to bring suit at any time within the limitation fixed by the Missouri statute. The claim that defendant has suffered detriment by the lapse of time because of the death or inability of several witnesses to testify can not avail here. The witnesses apparently were all available at the time proof was made in December, 1929, and defendant could then have investigated the claim and interviewed the many physicians who had treated plaintiff. But there seems to have been no difficulty in securing evidence as to defendant's total disability, as it appears that some twenty witnesses testified on that subject. It is apparent, too, that the misleading, if not false, statement made by defendant's agent was largely the cause of plaintiff's delay, and defendant should not be allowed to urge its own misconduct as the basis for any defense.

 We are urged to reverse the judgment because it is claimed the evidence was insufficient to warrant the court in submitting to the jury the issue of vexatious delay. In considering this contention it will be necessary to make some further reference to the evidence and the special findings of the jury. We must accept the fact that plaintiff submitted due proof of claim in December, 1929. This claim was ignored by defendant. Plaintiff, in May, 1940, again went to the office of defendant in Kansas City and inquired of one of the defendant's cashiers why he had not been told that he had disability benefits in one of his policies when he had inquired about it several years previous. The cashier replied that, "he wasn't supposed to tell." He then prepared proof of his disability upon forms furnished him by the defendant. These proofs were submitted to defendant in June, 1940. They included reports and statements of six different doctors, all clearly indicating that plaintiff had been totally disabled and was claiming total disability from February 6, 1928. Defendant took no steps to determine whether the statements made were true or not. It consulted no physicians with reference to plaintiff's physical condition and it did not interview the doctors whose statements were embodied in the proffered proof. It made no independent physical examination of plaintiff. It did not then deny liability on the ground that it had not received due proof before plaintiff reached the age of sixty, but by letter of July 8, 1940, it denied liability because plaintiff had not become totally disabled before reaching the age of sixty. It gave no other reason and stated no other grounds for refusing to pay disability benefits.

At the trial, defendant did not seriously rely upon the ground upon which it had denied liability, but its defense was chiefly bottomed on the alleged fact that due proof had not been given in accordance with the terms of the policy. It then, for the first time, made claim that due proof was not given before plaintiff reached the age of sixty, and for the first time it asserted that plaintiff's claim was barred by the statute of limitations. In fact, the defense that plaintiff was not totally disabled seems not to have been seriously urged in the lower court, and is entirely abandoned here. It is said that the issue should not have been submitted to the jury because plaintiff had made no claim that he had submitted proof of disability prior to June, 1940. In view of the verdict of the jury and the undisputed testimony, this contention is without support in the record.

It is also said that defendant was entitled to litigate the disputed question of fact as to whether plaintiff was totally and permanently disabled during the period between 1929 and 1940. The proof submitted in 1940 at least, abundantly proved this fact, and defendant, without independent investigation by itself or calling for an examination of plaintiff or consulting any doctor with reference to the question of defendant's disability, arbitrarily denied the claim on the ground that plaintiff was not totally and permanently disabled. It is also argued that defendant was entitled to contest the issue of law as to whether due proof of disability, binding on the defendant, had been made in 1929. The short answer to that is that the claim was not declined on that ground.

 It is also contended that defendant's defense was warranted because plaintiff was not entitled to recover as much as he sued for. Plaintiff sued for

disability benefits and return of premiums paid from the date of his disability, February 6, 1928, to the date suit was filed. The trial court ruled, however, that he was entitled to recover for disability benefits beginning one year after the anniversary of the policy next succeeding the receipt of due proof and would be entitled to the return of premiums beginning with the anniversary date of the policy next succeeding the receipt of due proof. There can be no doubt about the good faith of plaintiff's claim, but the condition precedent to its assertion had not taken place early enough to entitle him to recover the entire amount for which he sued. However, the defendant did not refuse payment on that ground; neither did it offer to pay the amount which was due plaintiff, but it insisted that nothing whatever was due. In these circumstances, we think the question as to whether or not defendant's refusal to pay was vexatious, was a jury question. Friedman v. State Mutual Life Assur. Co., Mo.App., 108 S.W.2d 156; Coscarella v. Metropolitan Life Ins. Co., 175 Mo.App. 130, 157 S.W. 873; Trembley v. Fidelity & Casualty Co., Mo.App., 243 S.W. 201; Rice v. Provident Life & Accid. Ins. Co., 231 Mo.App. 560, 102 S.W.2d 147; Porter v. Equitable Life Assur. Society, Mo.App., 71 S.W.2d 766; Wood v. General Ins. Co. of America, 229 Mo.App. 296, 77 S.W.2d 167; Glover v. Liverpool & London & Globe Ins. Co., 193 Mo.App. 489, 186 S.W. 583. The right to recover for vexatious delay is, of course, dependent upon the Missouri statute as that statute has been construed by the decisions of the appellate courts of that state. There is no direct evidence on the question but the issue is one that must in its nature be shown by circumstantial evidence. Thus, in Friedman v. State Mutual Life Ins. Co., supra, the Kansas City Court of Appeals, among other things, said [108 S.W.2d 164]: "Direct and positive evidence to the effect that the delay in payment was vexatious is not required; that such delay was vexatious may be shown from the circumstances in the record. * * * In determining the question of vexatious delay, the court had the right to take into consideration the validity of the plaintiff's claims and the fact that it became necessary to institute a suit to collect them. Where such claims are valid, the fact that the defendant declines to pay without litigation is of itself evidence tending to show the delay thereafter to be vexatious. It is charged with a knowledge of the law."

In Trembley v. Fidelity & Casualty Co., supra, the St. Louis Court of Appeals said [243 S.W. 203]: "However, it is our understanding that, where there is evidence by direct proof of vexatious refusal to pay, or where an inference may be made from all the facts and circumstances in the case that there was a vexatious refusal on the part of defendant to pay the policy, that then such issue should be submitted to the jury."

In Glover v. Liverpool & London & Globe Ins. Co., supra, defendant contended that it was not liable for penalty and attorney fees because plaintiff recovered less than the amount for which he had sued. In disposing of this contention the court, among other things, said [193 Mo.App. 489, 186 S.W. 584]: "There is a vital difference between the position of an insurer who wrongfully refused to recognize any liability under the policy and one (as in the Kahn and Fager cases) whose only asserted offense was that of refusing to accede to a demand in excess of the liability under the policy. And where, as in the instant case, the insurer refused the offer of the insured to accept the amount of the actual loss in complete satisfaction of the liability and thereby compelled the insured to bring suit for the recovery of what was due him, the jury are entitled to find such refusal was vexatious and to inflict the penalty, regardless of whether or not the pleaded demand is in excess of the real liability."

The other contentions made by defendant in support of its appeal are, we think, without merit.

There remains for consideration the issue presented by plaintiff's appeal. The jury, by its general verdict, found the issues in favor of the plaintiff and assessed "the amount of plaintiff's recovery under the policy (for benefits and premiums paid) in the amount of Twenty-two hundred dollars & Premiums, and interest in the amount of ———— Dollars ($ No)." Plaintiff moved for judgment in accordance with the answers to the special interrogatories. The court had already entered judgment on the general verdict awarding plaintiff $2,200, plus $1,125 attorney fees. Plaintiff contended below, and renews the contention here, that on the general verdict finding in effect that he was totally and

permanently disabled from February, 1928, to July, 1940, and on the answers to the special interrogatories finding that he had given due proof of his disability on or about December 18, 1929, that he was entitled to judgment for the amount of premiums paid. The motion was made pursuant to Rule 49(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides for the submission of a general verdict to the jury and with it written interrogatories upon one or more issues of fact, the decision of which is necessary to a verdict, and which also provides that: "When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict or may return the jury for further consideration of its answers and verdict or may order a new trial."

The Seventh Circuit, in Hudson Rug Refinishing & Cleaning Corp. v. Prime Mfg. Co., 115 F.2d 615, acting under this rule, entered judgment in accordance with the answers, increasing the amount of the verdict to correspond with the special interrogatories. In the instant case, the court was of the view that there was no inconsistency between the general verdict and the answers to the special interrogatories.

■ We think there was an inconsistency which the Court should have corrected. While judgment had been entered, the time for appealing had not expired nor had the term at which the judgment was entered expired. On defendant's appeal from the judgment the entire record is before us which we think discloses manifest error. As has already been observed, the jury in answer to Interrogatory No. 4 found that plaintiff had been totally disabled since February, 1928. The trial court had charged the jury that if they answered this interrogatory in the affirmative, which they did, they should return a general verdict for plaintiff for the annual benefits provided under the policy and for the annual premiums paid by plaintiff for the number of years for which each was payable according to the terms of the policy. There was no dispute concerning the validity of the policy nor the amount of the annual benefit, nor the amount of the annual premiums returnable to plaintiff. Neither was there any dispute as to the number of years for which plaintiff was entitled to recover the annual premium and the annual benefit. The annual benefit was $200 and the term for which it was recoverable was ten years. The annual premium was $89.56 and the term for which it was recoverable was seven years, the policy having been paid up three years before the action was brought.

■ On an affirmative answer to Interrogatory No. 4 plaintiff therefore became entitled as a matter of law to a verdict for $2,000 in benefits and for the return of $626.92 in premiums. As has been observed the jury also returned a general verdict on this phase in favor of plaintiff. The court instructed the jury that they might allow interest or not. The jury in their discretion having left blank the space provided for interest in the form of verdict, that should be accepted as a finding against the allowance of interest. Having in mind the jury's answer to Interrogatory No. 4, it is clear that it endeavored to follow the court's instructions but through carelessness, inadvertence, or mistake it made an error in favor of the plaintiff in the calculation in the amount of benefits and returned on this claim, the sum of $2,200 instead of $2,000, and it also failed to calculate in money the amount due plaintiff on account of premiums. The trial judge permitted the verdict as returned to stand and entered judgment thereon as follows: "It is Therefore, Ordered, Adjudged and Decreed by the Court that the plaintiff, Jacob Wayne, have and recover of the defendant, the New York Life Insurance Company the sum of Twenty two Hundred Dollars ($2200.00) and *premiums*." (Italics supplied)

■ Plaintiff in his motion called the court's attention to the jury's error in calculations with respect to benefits payable under the policy and its failure to calculate the amount due plaintiff on its verdict for premiums. It is observed that the verdict included a finding in favor of plaintiff for "premiums" but it did not calculate the amount due under this finding. In plaintiff's motion he asked for judgment for benefits and premiums in the sum of $2626.92, basing his motion upon Paragraph (b) of Rule 49 of Civil Procedure. On the denial of this motion plaintiff instead of appealing from the final judgment which the court had refused to correct, attempted to appeal from the order. While we think the trial court should have granted plaintiff's motion to correct the judgment the order denying plaintiff's

motion is not a final decision within the meaning of 28 U.S.C.A. § 225, and for that reason we are without power to consider plaintiff's appeal from that order. The judgment from which the defendant has appealed in this case was the final decision of the court below. By overruling plaintiff's motion to vacate its final decision and entering a new one in its stead, the court merely reaffirmed the finality of the judgment as originally entered, and plaintiff should have appealed from that judgment. On such an appeal plaintiff might have assigned as error here the failure of the court to grant his motion if the motion and ruling thereon were embodied in the record, even though the motion was made after entry of judgment. Harrison v. United States, 2 Cir., 7 F.2d 259; Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; Glenwood Irrigation Co. v. Vallery, 8 Cir., 248 F. 483; Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439; Moore's Fed.Practice, Vol. 3, Page 3728; Southern Pacific Co. v. Klinge, 10 Cir., 65 F.2d 85; Miller v. Maryland Casualty Co., 2 Cir., 40 F.2d 463.

The issue presented to the trial court by this motion was not one addressed to its discretion. Plaintiff under the jury's answer to Interrogatory No. 4 was entitled as a matter of law to a judgment in accordance with that answer. While plaintiff is not entitled to urge the error on his attempted appeal from the order denying his motion, it does not follow that the court is powerless to correct this manifest error and thus prevent a miscarriage of justice. Unlike the situation presented in Mutual Benefit Health & Accident Ass'n v. Thomas, 8 Cir., 123 F.2d 353, the computation of the amount due plaintiff involved no question of fact. United States Potash Co. v. McNutt, 10 Cir., 70 F.2d 126; American Lumber & Mfg. Co. v. Atlantic Milling & Lbr. Co., 3 Cir., 290 F. 632; American National Bank v. National Wallpaper Co., 8 Cir., 77 F. 85. The general verdict was inconsistent with the jury's answer to Interrogatory No. 4, since under the general verdict plaintiff received more for benefits than the sum to which he was entitled under the jury's answer to Interrogatory No. 4 and the jury failed to calculate in money the amount to which plaintiff was entitled for premiums. The general verdict was in effect a finding for the plaintiff for a sum certain plus an uncertain sum and. thus conflicted with the answer to Interrogatory No. 4 under which plaintiff was entitled to a certain recovery. The errors involved merely matters of calculation and no question of fact. The error is manifest and appears on the face of the record before us on defendant's appeal from the judgment. Such an error though not urged by either party may be considered by us under the familiar rule that appellate courts may notice errors apparent on the face of the record though not assigned, in order to prevent a manifest miscarriage of justice. Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037; Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439; Fricke v. General Accident & Fire Assurance Corp. Lt'd., 8 Cir., 59 F.2d 563; Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345; Wiborg v. United States, 163 U.S. 632, 16 S.Ct. 1127, 1197, 41 L.Ed. 289. The power is one that is sparingly exercised by appellate courts, but its existence cannot be doubted. Ordinarily to warrant the exercise of this power the error must be one which results in an injustice to the party bringing the case before the court. Here the error is one resulting in manifest injustice to the plaintiff and not to the defendant. But we think this fact is not necessarily controlling upon the power of the appellate court.

The error disclosed by the record not only results in a manifest injustice to plaintiff as to the amount of the judgment entered, in so far as it is certain, but also as to the entry of a judgment which by reason of its indefiniteness and uncertainty may not be enforceable as to that part of the judgment which purports to award plaintiff "premiums" without stating the amount of such premiums. In this condition of the record we feel impelled to notice a manifest error though not assigned.

The judgment appealed from is, therefore, modified and the cause is remanded to the trial court with directions to amend the final judgment to show a recovery for plaintiff in the sum of $2,000 for benefits and the sum of $626.92 for premiums besides the attorney fee as assessed. And so modified and amended the judgment is affirmed. Plaintiff's appeal from the order refusing to amend the judgment is dismissed.