## COLUMBIAN NAT. LIFE INS. CO. v. KEYES (two cases).

### SAME v. MARGUERITE KEYES, Inc.

Nos. 12602–12604.

Circuit Court of Appeals, Eighth Circuit.

Oct. 25, 1943.

Rehearing Denied Nov. 16, 1943.

Writ of Certiorari Denied Jan. 31, 1944.

See 64 S.Ct. 521.

D. A. Murphy, of Kansas City, Mo. (John T. Harding, R. Carter Tucker, and John Murphy, all of Kansas City, Mo., on the brief), for appellant.

Roscoe C. Van Valkenburgh, of Kansas City, Mo. (Arthur Miller and Miller, Gumbiner, Sheffrey & Van Valkenburgh, all of Kansas City, Mo., on the brief), for appellee.

Before WOODROUGH, THOMAS, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

The Columbian National Life Insurance Company, a Massachusetts corporation, appeals in these three cases to reverse judgments against it on three life insurance policies which it wrote on the life of George T. Keyes and delivered to the insured at Kansas City, Missouri, upon his applications there executed before the company's medical examiner. The policies were in force at the time of the death of the assured on April 10, 1942, but though due proof of loss was made, the company refused to pay. The proof of loss was dated April 17, 1942, and no word having been received from the company, demand for payment was made upon it by a letter of May 7, 1942. The letter elicited no response, but about the middle of May, 1942, the local general agent of the company called on plaintiffs' counsel "to see if he could get a lump sum settlement on all these policies." After another letter had been written to the company demanding payment, the company's vice-president and general counsel wrote on May 21, 1942, that he had advised the company to resist payment of the policies. His letter contained no denial of liability under the policies and no reason was given for the "resistance" or refusal to pay.

Thereupon the suits were brought and the company plead in defense (1) that the insured had committed suicide. It admitted that Section 5851, Revised Statutes of Missouri, 1939, Mo.R.S.A., commonly known as the "Missouri Suicide Statute", provided as follows: "Suicide no defense, when. In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

But it alleged that the statute was invalid under the Missouri constitution in that it was not clearly expressed in the title of the Act of May 24, 1879, in which it was included as a part, contrary to the requirement of Section 28 of Article IV of the constitution of 1875 Mo.R.S.A.; (2) that although it was agreed in each of the insurance contracts by provision duly stamped thereon that "Any policy of insurance issued upon this application shall be considered a Missouri contract and its terms shall be construed in accordance with the laws of the State of Missouri unless otherwise specified herein by the applicant," nev--

**384**

ertheless the contracts were Massachusetts contracts because the last acts done in their consummation were done in Massachusetts; (3) that the Missouri Suicide Statute is "in conflict with the law and public policy of the State of Massachusetts" where the provisions contained in the policies prescribing very small·payments in the event of death of the insured by suicide, are enforceable.

Motions to strike each of the defenses as insufficient in·law were sustained by the court, and on the company's refusal to plead further, motions for judgments for plaintiffs on the pleadings were sustained and judgments entered accordingly.

The Supreme Court of Missouri sustained the constitutionality·of the "Missouri Suicide Statute" against the attack on the stated grounds, before the trial of the cases in the District Court, and defense (1), supra, was no longer urged. Edwards v. Business Men's Assurance Co., Mo.Sup., 168 S.W.2d 82.

■■ We find no merit in the plea that construction of the insurance contracts was controlled by Massachusetts law. The express contract of the parties to the contracts that they should be considered Missouri contracts and be construed in accordance with the laws of Missouri was perfectly valid and binding and required the Missouri court to apply the Missouri law on the trial of the cases in Missouri. Fidelity Loan Securities Co. v. Moore, 280 Mo. 315, 217 S.W. 286; Hansen v. Duvall, 333 Mo. 59, 62 S.W.2d 732, 739; see, also, Brotherhood of Railroad Trainmen v. Adams, 222 Mo.App. 689, 5 S.W.2d 96, and Zarnecke v. Blue Line Co., Mo.App., 54 S.W.2d 772. We cannot be concerned with the course the defense of suicide might have taken ·in trials in Massachusetts on the same insurance contracts. The suicide provision in each of the policies is in manifest conflict with the public policy of Missouri declared in the statute, and the District Court was not in error in sustaining the motion to strike the same where pleaded as constituting no defense in law to the suits on the policies.

Recoveries for attorney's fees and statutory damages on account of the company's alleged vexatious refusal to pay under Section 6040, Revised Statutes of Missouri, 1939, Mo.R.S.A., were also sought in the suits, and the issue as to the plaintiffs' claim to such recoveries was tried out by the court on evidence additional to the

pleadings, jury being waived. The court found in each case "that the defendant's refusal to pay the amount of the insurance benefits provided in the policy of insurance was for the mere purpose of vexatiously delaying the payment thereof to the plaintiff." It rendered judgment for ten percent damages and attorney's fees in the aggregate amount of $10,000.

■ On the several occasions when this court has been called on to apply Section 6040, we have fully recognized that insurance companies must be protected in their right to refuse to pay and to litigate loss claims to which they have good grounds to believe and do believe that they have legal defense. But Section 6040 is constitutional. The question whether the company's refusal to pay the insurance in these cases was vexatious was a question of fact and the trial court's finding must be sustained unless clearly erroneous. The court's written opinion accompanying its decision reflects careful consideration given, not only to the matters pleaded by the company, but to relevant circumstances surrounding the refusal to pay.

■ The court observed that "the defendant had knowingly and advisedly contracted with the insured that each of the policies would be treated as if issued in Missouri and· construed under the laws thereof. Any variation and departure by the defendant from its solemn and considered agreement must be treated as an act of bad faith." This observation was not rested entirely on the provisions of the insurance contracts in suit, but there was evidence of correspondence between the Missouri Insurance Commission and this insurance company showing that the company's counsel had not only given the solemn assurance that "Although I have been General Counsel of this Company since 1907, I am unable to recall or find a case in which this Company has in Missouri contended that a life policy issued and. delivered in Missouri was not a contract subject to the laws of the State of Missouri",. but the company by its actuary complied with the Commission's order to use the stamped provision to make all the insurance business it did in the state Missouri contracts, and by formal resolution of the Executive Committee of the company, the agreement that all such contracts should be made Missouri contracts was approved. The circumstances throw light on the question of the good faith or want

of it in the assertion of the unmeritorious defense and tend to support the court's conclusion of bad faith.

■ The alleged unconstitutionality of the Missouri Suicide Statute was asserted in the face of experience of nearly fifty-three years of insurance business done in the state in conformity with its provisions and state decisions upholding its constitutionality. The refusal to pay and the defending of the suit continued after the Supreme Court of Missouri had answered the particular contention against constitutionality the same as before. Whether there was in fact any good basis for reliance on the unconstitutionality of the statute in the refusal to pay was properly for consideration of the District Court, and the court's conclusion adverse to the company was not clearly erroneous. The court properly stressed the undisputed fact that "When proofs of death of the assured were tendered, the defendant did not offer any reason for its delay or refusal to pay the policies; and, moreover, the question as to the place of contract and the one on the validity of the 'suicide statute' were not raised until by answer after the suit was filed. The defendant could not have acted in good faith where its defenses were so devoid of merit."

■ Although the opinion of the District Court does not indicate that it gave any weight to the testimony of Arthur Miller, an attorney for the plaintiffs, the testimony was competent on the issue. He testified that the general agent of the company in Kansas City came to his office to see if he could get a lump sum settlement of the three policies. Although the agent indicated that the matter of paying or not paying the policies was out of his hands and was in the hands of officers in Boston, he had apparent authority "to see if he could get a lump sum settlement." In that connection, he said he did not know and could not tell why the company would not pay the policies, and that "They usually contest cases where the two year limit hasn't expired, and you know they have very smart attorneys back there in Boston." Evidence that the insurance company put the matter of refusing to pay an insurance policy in the hands of its home agents and sent its local agent out to "see if he could get a lump sum settlement", with innuendoes about litigating and "smart attorneys back there in Boston", cannot be properly excluded on the inquiry of vexatious refusal to pay.

■ Without again discussing the Missouri decisions on that issue, we conclude that the action of the court in awarding judgment for the plaintiffs thereon is supported by substantial evidence and not clearly erroneous. Evans v. Great Northern Life Ins. Co., Mo.App., 167 S.W.2d 118, 124; Wayne v. New York Life Ins. Co., 8 Cir., 132 F.2d 28, 35; Porter v. Equitable Life Assurance Society, Mo. App., 71 S.W.2d 766; Lemay Ferry Bank v. New Amsterdam Casualty Co., 347 Mo. 793, 802, 149 S.W.2d 328; Union Indemnity Co. v. Home Trust Co., 8 Cir., 64 F. 2d 906.

■ But study of the record has not convinced that the services rendered by the attorneys justified the full amount awarded as attorney's fees. Though the amount of the policies was fifty thousand dollars, and the compensation should accord with the responsibility, and the services were well performed, the time actually devoted by the attorneys was comparatively short. The evaluations made by the lawyers experienced in setting fees and the conclusion of the District Court cannot relieve this court of its duty to reconcile allowances of attorney's fees to the conscience of this court. It also has experience in such evaluation.[1] Our conclusion is that the sum of $7,500 would afford fair and proper compensation for the services rendered by attorneys for plaintiffs.

■ The prayer of appellees for further allowance of attorney's fees in this court is denied because we think the appeals were not frivolous or vexatious.

The judgments for the amounts of the policies, interest and costs, are affirmed. The judgments for statutory penalties are affirmed. The judgments for attorney's fees are affirmed on condition that remittitur of $2,500 thereof is filed within thirty days from final decision in this court.

---

[1] "Appellate courts, as trial courts, are themselves experts as to the reasonableness of fees, and may, in the interest of justice, fix the fees of counsel, albeit in disagreement on the evidence with the views of the trial court." Mercantile-Commerce B. & T. Co. v. Southeast Arkansas Levee District, 8 Cir., 106 F.2d 960, 973.