Motion of plaintiff for preliminary injunction overruled.

## WIENER v. MUTUAL LIFE INS. CO. OF NEW YORK.
### No. 3496.

District Court, E. D. Missouri, E. D.
July 20, 1945.

See, also, 4 F.R.D. 358.

Burnett, Stern & Liberman, of St. Louis, Mo., for plaintiff.

Jones, Hocker Gladney & Grand, of St. Louis, Mo., for defendant.

HULEN, District Judge.

Plaintiff instituted this action against the defendant to recover disability benefits under a policy of insurance issued by defendant. The petition is in four counts, for yearly benefits. The first count covers the period July 3, 1940, to July 3, 1941. Counts two, three, and four are for successive yearly periods. The answer put in issue the total and permanent disability of the plaintiff within the meaning of the term as used the policy during the period in question. The case was submitted to the jury on interrogatories. The jury answered the interrogatories in favor of the plaintiff, and also returned a verdict finding defendant's refusal to pay the plaintiff was vexatious, arbitrary, and without reasonable cause, and allowed plaintiff $1500 attorneys' fee, but no damages. The principal complaint now presented by motion for new trial of the defendant is that the Court erred in submitting to the jury the issue of vexatious refusal to pay plaintiff's claim.

This is the second trial of this case. The first trial was in the state court. There plaintiff suffered an adverse verdict. On appeal to the St. Louis Court of Appeals, that Court, 170 S.W.2d 174, certified the case to the Supreme Court because of division in opinion. The Supreme Court reversed and remanded the case for new trial, 179 S.W.2d 39, on account of error in admission of evidence and instructions given. The record on the second trial is not substantially different than that of the first trial as summarized in the opinions of the Supreme Court.

By brief, the plaintiff submits the following circumstances in support of his position that the issue of vexatious refusal to pay was properly submitted to the jury:

"1. The fact that the defendant company had recognized the claim and paid the benefits thereunder for four years, but in 1941 ceased its payments without any apparent reason or justification.

"2. The undisputed testimony that plaintiff's condition had not improved by 1941, but, if anything, was worse.

"3. The report by Dr. O'Neal, the defendant's own doctor, in May, 1941, that plaintiff was still disabled and should not return to work.

"4. The inexplicable, arbitrary failure of defendant to produce any testimony on the ultimate issue, especially its failure to have the in;· red examined before trial by its doctors or by a doctor appointed by the court.

"5. The 'maneuverings' by defendant in its pleadings in an unjustified, reprehensible effort to get immaterial, prejudicial evidence before the jury.

"6. The attitude of the company, exemplified by the statements of its adjuster, that it would only make a lump sum settlement, to get the claim off of its books, despite its contract to continue annual payments during the period of disability."

432

In examining the authorities cited by learned counsel for the plaintiff and defendant, it appears that while the opinions handed down by the appellate courts construing the statute on vexatious refusal to pay, R.S. No. 1939, Section 6040, Mo. R.S.A., are uniform as to principles of law announced, the application of the law to the fact situations in the particular cases does not present a uniform construction of the law. The authorities are agreed that a penalty for vexatious refusal to pay is not lightly to be assessed and its imposition will, with rare exceptions, be found to be based upon evidence of conduct on the part of the insurer which clearly reflects delaying tactics, bad faith, or a wilful and recalcitrant attitude toward the claimant on the policy. The cases make it clear that absent such conduct, if there is any reasonable doubt on the part of the insurer as to its liability, it is justified in refusing to pay the claim, and where such liability is doubtful, it is error to submit to the jury the question of whether the insured's refusal to pay was vexatious. Clower v. Fidelity-Phenix Fire Ins. Co., St. Louis Ct. App. 1921, 220 Mo.App. 1112, 296 S.W. 257; Paetz v. London Guarantee & Accident Co., Ltd. of London, England, K.C.Ct.App. 1934, 228 Mo.App. 564, 71 S.W.2d 826. The penalty should not be permitted unless the evidence and the circumstances show that the refusal to pay was wilful and without reasonable cause, as the facts would appear to a reasonably prudent man before the trial. Volz v. Travelers Insurance Co., K. C.Ct.App. 1942, 161 S.W.2d 985.

The defense urged at both trials of this cause was one of fact. Such being the case, the question of vexatious refusal to pay will not be one for the jury to pass upon unless there is "something of a substantial nature" in the case to indicate that the insurer has acted in bad faith and without reasonable cause. St. Clair v. Washington Fidelity National Insurance Co., St. Louis Court of Appeals, 89 S.W.2d 85. We review some of the cases as illustrations of what the courts have in mind when they refer to "something of a substantial nature" in the case to indicate that the insurer has acted in bad faith and without reasonable cause. In Clair v. American Bankers Ins. Co., K.C.Ct.App. 1940, 137 S.W.2d 969, it was denial of liability without making any investigation and assertion that the policy was reinsured with another company, a claim later shown to have no basis in law or fact. In Thomas v. Metropolitan Life Ins. Co., K.C.Ct.App. 1935, 230 Mo.App. 206, 89 S.W.2d 590, it was the writing of letters by the insurer which misconstrued the terms of the contract sued on, and which set up an arbitrary and false basis as the grounds for refusing to pay. In Lux v. Milwaukee Mechanics' Ins. Co., K.C.Ct. App. 1930, 30 S.W.2d 1090, it was the raising of the issue of plaintiff's insurable interest without a tender back of premiums. In White v. American Life & Accident Ins. Co., St. Louis Ct.App. 1936, 90 S.W.2d 118, it was defendant's action in taking the position that at the time the policy was issued, assured was suffering from duodenal ulcers, which it claimed had contributed to his death, while assured stated in his application he was in good health. The insurance company did not have any evidence to the effect that the insured was suffering from duodenal ulcers at the time the policy was issued. The court held that the defendant could not reasonably have expected the return of a verdict in its favor upon the issue of breach of the sound health provision of the policy. In Florea v. Iowa State Ins. Co., St.L.Ct.App. 1930, 225 Mo.App. 49, 32 S.W.2d 111, it appeared that three days after a fire loss, plaintiff notified the company's agent; that an investigator came to the scene of the first a month later; that neither agent nor investigator would inform plaintiff as to the company's position on paying the loss. A letter to the company got no reply. Mortgage of the premises had like experience. The local agent could get no response from the company. Such facts were held to sustain recovery of penalty for vexatious refusal to pay the loss. In Novosel v. Mid West Life Ins. Co. of Mo., K.C.Ct.App. 1925, 276 S.W. 87, recovery was allowed where defendant's answer alleged that at time of issuance of the policy, insured had tuberculosis of the lungs, which resulted in her death, and that the insured was aware of her condition, and that the insured falsely warranted her condition in her application for insurance. At the trial, the evidence of defendant's medical examiner showed that insured did not have tuberculosis at time of her application. Deceased's death certificate showed she died of lobar pneumonia. The evidence showed all premiums on the policy were paid, yet it was insisted by defendant at the trial that there was a default in payment of premium. In Occidental Life Insurance

Co. v. Eiler, 8 Cir., 125 F.2d 229, certiorari denied 316 U.S. 688, 62 S.Ct. 1278, 86 L.Ed. 1760, it was the act of the insurance company in contesting a claim for accidental death, where deceased committed suicide while insane, in the face of a long line of decisions, both federal and Missouri, which sustained the proposition that suicide by an insane person is death by accidental means. In Columbian National Life Insurance Co. v. Keyes, 8 Cir., 1944, 138 F.2d 382, it was the act of the defendant in raising the question of the constitutionality of the Missouri suicide statute and also claiming the contracts in issue were Massachusetts contracts, although each contained an express provision to the effect that it was to be treated as a Missouri contract.

Plaintiff in the case at bar claims that the payment by the defendant company of benefits under the policy for four years is a circumstance to support the allowance of damages for vexatious refusal to continue payments under the policy. In Stearns v. Prudential Ins. Co. of America, Springfield Ct.App. 1940, 235 Mo.App. 135, 140 S.W.2d 766, 774, a situation somewhat similar to the one now urged by the plaintiff was present. In the Stearns case, the plaintiff became disabled because of pleurisy and pulmonary tuberculosis, and the defendant commenced the payment of disability claims under the provisions of the policy. Payments were continued for almost two years before the defendant terminated the payments. Plaintiff filed suit, whereupon defendant resumed payments for several years. Payments being suspended, plaintiff instituted an action on the policy. Trial resulted in a verdict for the plaintiff, assessing damages for monthly payments due and for vexatious refusal to pay. In the Stearns case, plaintiff was examined by two physicians, upon whose report the insurance company made payments. The court found that the plaintiff was totally and permanently disabled unless in fact he was a malingerer. There was no evidence of malingering on the part of the plaintiff. The court ruled that the insurer "should not have attempted, without such evidence, to defend the suit by relying upon the ingenuity of counsel to assign numerous harmless errors." In the case at bar, defendant in effect made a charge of malingering against the plaintiff by the second amended answer. It was the opinion of this court that not only was there no evidence offered on the issue, but defendant must have been cognizant of the lack of evidence to support it when it tendered the plea. In Rush v. Metropolitan Life Insurance Co., St. Louis Ct.App. 1933, 63 S.W.2d 453, 456, plaintiff brought suit on a life insurance policy and verdict included damages for vexatious refusal to pay. One element in the case, commented on by the appellate court, in connection with allowance of penalty, was a finding by the defendant's medical examiner tending to support the claimant's right to recover on the policy. In the case at bar, the defendant had Dr. Wiener examined by its physician in May, 1941, and from him received a report that plaintiff was still disabled and could not return to the practice of his profession without endangering his life. There is a further fact in the Rush case having some relevancy in the present case, in that the insurance company relied upon testimony of the attending physician to assist its defense. The court held that the company should have known that such evidence "would be inadmissible in evidence, absent a waiver of privilege on the part of plaintiff which it had no right to anticipate." In this case it appears that the company based its defense in part upon evidence of other insurance carried by Dr. Wiener, yet the law is so well settled as to the admissibility of this evidence that we think the observation of the court in the Rush case is applicable to the defendant's position in this case, as to this line of evidence which the defendant was relying on. In Albert v. Metropolitan Life Insurance Co., Springfield Ct.App. 1936, 95 S.W.2d 343, a verdict for damages for vexatious refusal to pay was sustained on an accident policy. There the court comments on the result of plaintiff's examination by physicians at the instance and request of the defendant, as part of evidence upon which the recovery of damages for vexatious refusal to pay could be sustained. In Groves v. Great Eastern Casualty Co., Kansas City Court of Appeals, 1902, 212 Mo.App. 316, 246 S.W. 1002, suit was on an accident insurance policy which provided for reimbursement for injuries caused by accidental means while traveling as a passenger in a place regularly provided for passengers. Verdict in the trial court included damages for vexatious delay. In sustaining the findings, the appellate court commented upon the fact that the company never intended to defend on the ground that the plaintiff was not traveling as a passenger in a place regularly provided for passengers, until the trial. In

434

this case, there is evidence that before the institution of this suit, the representative of the insurance company called on Dr. Wiener's counsel and discussed disposal of the case. The defendant's representative at that time did not make a claim that Dr. Wiener was not totally and permanently disabled. At that time (October, 1941), defendant's representative stated "that they wanted to dispose of the claim; they wanted it off their books." Defendant wanted to negotiate a lump-sum settlement. An offer of $7,500 was made. There is evidence from which it could be found that the defendant at that time assumed the disability of the plaintiff. Defendant's representative (referring to the disease which had caused Dr. Wiener's disability) stated —"there isn't any expectancy with people who have coronary thrombosis—a man who had had coronary thrombosis was dead; there was no expectancy." In Streeter v. Washington Fidelity National Insurance Co., St. L. Ct. of App. 1934, 229 Mo.App. 33, 68 S.W.2d 889, the appellate court held that an offer of settlement was a circumstance for the jury to consider in awarding damages for vexatious refusal to pay. In Columbian National Life Insurance Co. v. Keyes, supra [138 F.2d 383], there was evidence that the insured's company sent their local agent "to see if he could get a lump sum settlement." The Court of Appeals for the Eighth Circuit held this evidence admissible on the issue of vexatious refusal to pay.

■ The plaintiff urges as a circumstance from which the jury could properly infer vexatious refusal to pay "the 'maneuverings' by defendant in its pleadings in an unjustified, reprehensible effort to get immaterial, prejudicial evidence before the jury." We are of the opinion that such alleged conduct of the defendant has no bearing on the issue, as the right to recover any penalty must be based upon the insurer's conduct in refusing payment and not its action in defense of the suit.

In support of its assignment of error on submitting the issue of vexatious refusal to pay, defendant's brief sets out a lengthy list of circumstances alleged to constitute reasonable cause for refusing to continue payment of benefits to Dr. Wiener. These we will now consider against the background that in neither trial did defendant offer any testimony. Although many circumstances were alleged by it as justification for stopping benefit payments to the plaintiff, after having acknowledged its liability to plaintiff for many years by making payment, there is no evidence in the record before this Court that it had notice of any of the circumstances now relied on, prior to denying liability on the policy. On the record before this Court, the only information in defendant's possession as to plaintiff's condition prior to stopping payment on the policy was the report of a physician appointed by, and who examined plaintiff for, the defendant. The doctor's report was that plaintiff was unable to return to his profession. But we will consider the list of grounds asserted by the defendant and assume that facts relative thereto were in its possession prior to its act of stopping payments on the policy and before the institution of this suit. Defendant asserts that "other companies (had) also denied" liability to Dr. Wiener in 1940, and one company filed suit for a declaratory judgment. There is no evidence that defendant knew why the other companies denied liability. There could have been many reasons other than the claim of recovery. If prior to denial of liability and the institution of this suit the defendant even tried to find out why such action was taken by the other companies, the record does not show it. The settlement contract with other companies containing a clause that Dr. Wiener reserved the right to practice medicine in the future without affecting the company's obligation under the contract is listed. This was explained by Dr. Wiener. It was not inserted in the contract at his request, but over his protest. Inquiry would have revealed this state of facts to defendant. It is possible and probable the provision was inserted in the contract as a consideration for payment of less than the face amount of the obligation. The fact that plaintiff's "general physical condition has not progressed" since 1936 is listed. This would not show a recovery of plaintiff—at most only a stationary condition. Attention is directed to the occasional acts of plaintiff in giving medical lectures, editing two medical books, and carrying on experiments with animals. These do not show that plaintiff was no longer totally and permanently disabled within the meaning of the terms of the policy. It is in accord with the universally recognized treatment of one in plaintiff's condition that a total abstinence from all activity is harmful rather than helpful. That plaintiff "repeatedly sought medical" opinion and advice that he could return to the practice of his profes-

sion without endangering his life is on the list. This is the direct antithesis of malingering—as charged by the defendant in its last pleading. Investigation by defendant would have shown that no doctor was found who would give such advice, and many were approached. Defendant lays great stress on the jury verdict for the defendant in the first trial. We consider it of minor importance, first because the jury was misdirected as to the meaning of total and permanent disability under the terms of the policy, and, second, the jury was permitted to consider improper testimony of income from other insurance, in arriving at their decision. That evidence of income from other policies is admissible where the defense is malingering does not justify the defendant in proceeding on such knowledge of the law, absent ability to offer evidence of malingering. Defendant's chief claim is based upon failure of the state courts to accept plaintiff's theory that he was entitled to an instructed verdict. This is not controlling on the present question, in our opinion. We assume the trial judge was of the same opinion as the judges of the Supreme Court that whether plaintiff was totally and permanently disabled under the facts presented was a question for the jury. On this subject, the Supreme Court said [179 S.W.2d 43]: "The burden of proof was on the doctor. 'The jury * * * may believe or disbelieve the testimony of any one or all of his witnesses, though such evidence be uncontradicted and unimpeached.' * * * The doctor may not claim the verdict was against the weight of the evidence because a verdict for a defendant in such a case as this, need not be supported by affirmative evidence, the burden being on the other party."

■ Plaintiff is not required to make a case showing that he is entitled to a verdict as a matter of law before the question of vexatious refusal to pay may be a submissible issue. While it is true there is no direct and positive evidence to the effect that the stoppage of benefit payments to the plaintiff was vexatious, such evidence—that is positive and direct evidence—is not required. The jury is authorized in cases of this character to infer and conclude that the delay was vexatious, from a survey of all the facts and circumstances in the case bearing upon the conduct of the insurance company with respect to the issue.

■ We conclude that whether the situation and circumstances with which the defendant was confronted prior to the institution of this suit were sufficient to raise in the mind of a reasonable man a doubt or a question as to liability, or whether the refusal of the defendant to pay plaintiff under the policy was wilful and without reasonable cause, as the facts would appear to a reasonable man, are questions of fact for the jury under the record in this case.

■ We find no error in the admission of evidence of conversations with defendant's representative on the subject of lump-sum settlement. See Columbian National Life Insurance Co. v. Keyes, supra. At the time this testimony was received, the Court announced it was received solely on the issue of vexatious refusal to pay, and so instructed the jury on submission of the case. Defendant's belated objection that there was no proof of agency of Mr. Boyle we consider highly technical. Testimony with reference to the conversation between plaintiff's counsel and Mr. Boyle as representative of the defendant was offered and received in the first trial without objection as to agency. We do not believe the defendant was harmed because no direct testimony of the agency of Mr. Boyle was supplied.

### Order.

Motion of the defendant to set aside the verdict and findings of the jury and the judgment of the court and to enter a judgment in favor of the defendant in accordance with its motions for a directed verdict, or in the alternative to grant a new trial, or in the alternative to set aside the judgment entered herein and to enter a corrected judgment is overruled.